UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

CAPTAIN PAUL BROWN and
CAPTAIN MICHAEL NEUMAN,

       Plaintiffs,

v.

PORT CITY MARINE SERVICES, INC.,

       Defendant.

Case No. 1:22-cv-00070

Hon.

---

SALVATORE PRESCOTT PORTER
& PORTER, PLLC
Jennifer B. Salvatore (P66640)
*Attorney for Plaintiff Brown*
105 E. Main Street
Northville, MI  48167
(248) 679-8711
salvatore@spplaw.com

SCHULZ LAW PLC
Jack W. Schulz (P78078)
*Attorney for Plaintiff Neuman*
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jack.w.schulz@gmail.com

---

## **COMPLAINT AND JURY DEMAND**

NOW COME Plaintiffs Captain Paul Brown and Captain Michael Neuman, through their attorneys SALVATORE PRESCOTT PORTER & PORTER, PLLC and SCHULZ LAW PLC, who hereby complain against Defendant as follows:

1

## INTRODUCTION

1.     There is an old adage that "loose lips sink ships." Unfortunately, this long-running mantra discouraging seaman from reporting violations still exists in the minds of Defendant Port City Marine Services, Inc. and its leadership. This case is a textbook example of the retaliation seamen face for reporting serious life-threatening violations. Plaintiffs Captains Paul Brown and Michael Neuman served as captains for Defendant for years until Defendant obtained personal communications between the two discussing ongoing violations of another captain who was operating a vessel intoxicated. Within a month, Defendant terminated both Plaintiffs on the same day for separate, but equally absurd, pretextual reasons.

Plaintiffs file this complaint alleging their terminations were in violation of the employee protection provisions of the Seaman's Protection Act ("SPA") of 2010, 46 U.S.C.A. § 2114, as amended and re-codified, and the maritime tort of wrongful discharge.

## PARTIES AND JURISDICTION

2.     Plaintiff Captain Paul Brown is a resident of the State of Florida.

3.     Plaintiff Captain Michael Neuman is a resident of the State of Florida.

4.     Defendant Port City Marine Services, Inc. is a Michigan corporation with its principal place of business in Muskegon, Michigan.

2

5. This Court has jurisdiction under 49 U.S.C. §31105(c) as 210 days have passed since the Plaintiffs submitted complaints to the Occupational Safety and Health Administration ("OSHA")/Secretary of Labor and the Secretary of Labor has not issued a final decision. *See* 46 U.S.C § 2114(b)

6. Any delay in the issuance of a final decision by the Secretary of Labor is not due to bad faith of the Plaintiffs.

7. Pursuant to 28 U.S.C. § 1332, this Court also has diversity jurisdiction over Plaintiffs' claims.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)(2).

9. Venue is proper in the Western District of Michigan because that is where the Defendant is located and where the claims in this matter accrued.

## GENERAL ALLEGATIONS

10. Defendant Port City Marine Services, Inc. ("Defendant" or "PCMS") is a marine transportation company based in Muskegon, Michigan.

11. Plaintiff Captain Paul Brown ("Captain Brown") was hired by Defendant PCMS in 2014, to work as a Captain.

12. Plaintiff Brown has decades of experience as a ship's captain and is highly regarded in the industry.

13. Plaintiff Captain Michael Neuman ("Captain Neuman") was hired as a Captain by Defendant PCMS in 2009.

3

14. Plaintiff Neuman also came to his employment with Defendant after serving for decades as a ship's captain, and is likewise highly regarded in the industry.

15. During his almost twelve years of employment with Defendant, Captain Neuman received no significant discipline or negative performance reviews.

16. Likewise, Captain Brown received no significant discipline or negative performance reviews during his years of employment with Defendant.

17. In or around 2014-2016, Plaintiff Brown learned that a fellow Captain and employee of Defendant, Captain Charlie Edwards ("Captain Edwards"), abused alcohol while operating his vessel.

18. Notably, Captain Edwards' ongoing operation of a vessel while under the influence was/is a violation of applicable rules and regulations, including 46 U.S.C.A. § 2302(c).

19. In or around 2016, Plaintiff Brown and a co-worker, Jim Hedlund, reported their concerns regarding Edwards's alcohol use to PCMS's Vice President, Ed Hogan ("VP Hogan").

20. Mr. Hogan reassured Plaintiff Brown that he would take steps to correct the situation, however, upon information and belief, no disciplinary action was taken against Captain Edwards.

21. As a result of Defendant's inaction, Edwards continued to operate his vessel intoxicated, thereby endangering his crew.

22. During his employment with Defendant, Plaintiff Neuman also became aware that Captain Edwards operated his vessel while intoxicated.

23. Plaintiff Neuman verbally reported Captain Edwards's conduct to Defendant.

24. On information and belief, Defendant took no action in response to Plaintiff Neuman's reports.

25. Both Captain Brown and Captain Neuman had several verbal conversations with coworkers about the best action to take against Captain Edwards so as to avoid retaliation from Defendants.

26. At various points throughout the last few years of their employment, Plaintiffs Brown and Neuman exchanged messages and emails in which they discussed Captain Edwards's drinking and safety violations; PCMS's awareness and inaction; and potential steps Plaintiffs could take to report the violations and prevent their ongoing occurrence.

27. In September of 2020, Plaintiff Neuman began a leave of absence during which time Captain Edwards replaced him on Plaintiff Neuman's ship, the *Bradshaw McKee*.

28. Unbeknownst to the Plaintiffs, Captain Neuman's personal phone data/Apple account was logged into the phone of *the Bradshaw McKee*, allowing any individual possessing the phone to review Captain Neuman's private communications.

29. In or around December of 2020, Captain Edwards, now Captain of *the Bradshaw McKee*, was able to read and review the Plaintiffs' communications, including those discussing Capt. Edwards's substance abuse and safety violations, as well as Plaintiffs' dialogue on potential courses of action for reporting and preventing future violations.

30. In December of 2020, Plaintiff Brown learned that his private emails and texts with Plaintiff Neuman were showing up on the phone aboard *the Bradshaw McKee*, currently operated by Edwards.

31. Also in or around December of 2020, Plaintiff Neuman was contacted by another employee on *the Bradshaw McKee*, who had overheard Capt. Edwards and VP Hogan discussing that Plaintiffs' private texts were viewable on *the Bradshaw McKee* phone.

32. This employee shared with Plaintiff Neuman that VP Hogan was furious and had instructed Capt. Edwards to screenshot the text messages.

33. In reviewing these communications, Defendant learned that Plaintiffs intended to externally report Capt. Edwards's drinking and ongoing safety violations and Defendant's failure to address the problem.

34. On information and belief, Capt. Edwards and VP Hogan then shared Plaintiffs' communications directly with PCMS President Chuck Canestraight.

35. Captain Neuman contacted VP Hogan about the messages but did not receive a response. However, Captain Neuman spoke with his union representative who confirmed that Defendant had obtained and reviewed the messages, but that Defendant stated that it was "no big deal" and they would be bringing Neuman back in the spring.

36. Next, Captain Neuman spoke with PCMS President Canestraight to discuss issues with the *Bradshaw Mckee* phone and also to confirm that Neuman had deleted these messages.

37. Shortly thereafter, on February 1, 2021, Defendant terminated both Plaintiff Brown and Plaintiff Neuman.

38. Plaintiffs were terminated in retaliation for their complaints about Edwards and their stated intention to report Defendant's violations.

39. Defendant dredged up two prior incidents to justify Plaintiff Brown's termination, however these incidents were a pretext: they had occurred months

7

before his termination, moreover the incidents had not resulted in any disciplinary action or even a verbal warning.

40.     As further evidence of pretext, Mr. Joe Brown, Plaintiffs' union representative, told Captain Brown that his firing stemmed from his conversation with Plaintiff Neuman about Edwards and his pattern of drinking on the job.

41.     In a similar vein, Defendant stated it was terminating Plaintiff Neuman for something that had allegedly occurred five months prior, something Captain Neuman had in fact been ordered to do by VP Hogan, and regarding which there had been no earlier discussion or reference; this stated reason was a pretext for retaliation.

42.     Defendant, therefore, terminated both Plaintiffs on the same day and for parallel reasons that were fabricated and pretextual.

43.     Following a grievance through his union, Respondent eventually re-instated Plaintiff Brown. However, the unlawful termination and failure to appropriately address Captain Edwards's conduct caused Plaintiff Brown significant emotional and physical distress and anxiety, as well as reputational harm, and amounted to a constructive discharge under the law.

44.     On or around May 14, 2020, Plaintiff Brown submitted a letter to the Coast Guard outlining both his, and Plaintiff Neuman's, concerns regarding Capt. Edwards and Defendant.

8

45. Following their wrongful terminations, Plaintiffs each filed a whistleblower complaint with the Department of Labor ("DOL") and the Occupational Safety and Health Administration ("OSHA").

46. Plaintiffs file the present lawsuit pursuant to 49 U.S.C. §31105(c) as 210 days have passed since the submission of Plaintiffs' OSHA/DOL Complaints and the Secretary of Labor has not issued final decisions.

## COUNT I
## SEAMAN'S PROTECTION ACT, 46 U.S.C.A. § 2114

47. Plaintiffs incorporate here all previously stated allegations.

48. Plaintiffs were seamen and employees, as defined in the Act.

49. Defendant was Plaintiffs' employer as defined by the Act.

50. Plaintiffs were individuals engaged or employed in some capacity on board a U.S.-flag vessel or any other vessel owned by a citizen of the United States.

51. The Seaman's Protection Act ("SPA") provides that an employer may not discharge or in any manner discriminate against a seaman because the seaman in good faith has reported, or is about to report, to the Coast Guard or other appropriate Federal agency or department that the seaman believes a violation of maritime safety law or regulation prescribed under that law or regulation has occurred.

52. Prior to their termination, Plaintiffs messaged one another about, and discussed reporting, a coworker's alcohol abuse and negligence aboard Defendant's vessel, prohibited safety violations under 46 U.S.C.A. § 2302(c).

53. Plaintiffs' messages also discussed Defendant's failure to take disciplinary action against this coworker.

54. Defendant discovered and read Plaintiffs' private messages.

55. A reasonable person would perceive, by the nature and contents of the communications between Plaintiffs, that they intended to report Defendant and their coworker to an outside agency or entity.

56. Further, Plaintiffs have a history of and/or were otherwise perceived to have a history of reporting such activity.

57. Plaintiffs also reported their coworker's conduct to the U.S. Coast Guard on May 14, 2021.

58. Seamen are protected from retaliatory action by their employer for preparing to report violations of maritime safety laws under 46 U.S.C.A. § 2114(a)(1)(A).

59. Defendant violated the SPA by retaliating against Plaintiffs for protected activity under the SPA.

60. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earning, earning capacity, and fringe

benefits and have suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT II
## MARITIME TORT OF WRONGFUL DISCHARGE

61. Plaintiffs incorporate here all previously stated allegations.

62. Plaintiffs were employed by Defendant.

63. During Plaintiffs' employment, Defendant's employee abused alcohol while aboard and while operating a vessel, in violation of 46 U.S.C.A. § 2302(c).

64. The intoxication of crew-members poses a serious safety threat to all seamen on a vessel—and to others.

65. Maritime employers, such as the Defendant, can be held liable for failure to exercise due diligence and compliance with the law. 33 C.F.R. § 95.050

66. Plaintiffs reported this violation to Defendant.

67. Plaintiffs also discussed their intention to report externally Defendant's maritime safety violations.

68. Defendant was aware of Plaintiffs' internal report as well as their intention to report externally.

69. Defendant terminated Plaintiffs because of their internal report and their stated intention to report externally.

70. Plaintiffs' termination violated a strong public policy in favor of protecting the safety of seamen and the public on shared waters.

71. Allowing Defendant to fire Plaintiffs at-will for attempting to do something about another captain operating a vessel intoxicated only creates an incentive for seamen to risk the lives of colleagues in order to retain employment.

72. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earning, earning capacity, and fringe benefits and have suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## RELIEF REQUESTED

Plaintiffs seek all legal and equitable relief available to them, including:

a. All available damages for lost wages, lost benefits, emotional distress, reputational harm, and other compensation, plus interest at the statutory rate;

b. Additional liquidated damages in the amount of the above-requested award;

c. All necessary injunctive relief, including front pay;

d. Reasonable attorney's fees and costs incurred in this litigation;

e. Punitive damages necessary to address Defendant's egregious disregard for Federal and State regulations, as well as the safety of seamen.

f. All such further relief as shall meet equity and good conscience and as is permitted by law.

Date: January 25, 2022

Respectfully submitted,
SALVATORE PRESCOTT
PORTER & PORTER, PLLC

/s/ Jennifer B. Salvatore
Jennifer B. Salvatore (P66640)
Attorney for Plaintiff Brown
105 East Main Street
Northville, MI 48167
(248) 679-8711
salvatore@sppplaw.com

/s/ Jack Schulz
Jack W. Schulz (P78078)
Attorney for Plaintiff Neuman
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jack.w.schulz@gmail.com

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

CAPTAIN PAUL BROWN and
CAPTAIN MICHAEL NEUMAN

    Plaintiff,

v.

PORT CITY MARINE SERVICES, INC.,

    Defendant.

Case No. 1:22-cv-00070

Hon.

---

## DEMAND FOR JURY TRIAL

NOW COME Plaintiffs Captain Paul Brown and Captain Michael Neuman by and through their attorneys, SALVATORE PRESCOTT PORTER & PORTER, PLLC and SCHULZ LAW PLC, and hereby demand a jury trial in the above-captioned matter.

Dated:  January 25, 2022

/s/ Jennifer B. Salvatore
Jennifer B. Salvatore (P66640)
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
salvatore@sppplaw

/s/ Jack Schulz
Jack W. Schulz (P78078)
Attorney for Plaintiff Neuman
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jack.w.schulz@gmail.com

14